FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Western Division

97 APR 21 AM 9: 27

U.S. DISTRICT COURT
N.D. OF ALABAMA

MYRA PAPPAS, )
    Plaintiff(s); )
 )
-vs.- )   No. CV-95-P-994-W
 )
RELTEC CORPORATION, RICHARD )
SCHWOB, THOMAS D. MYERS and )
TOM FISHER, )
    Defendant(s). )

**ENTERED**

APR 2 2 1997

## OPINION

A Motion for Summary Judgment by defendants RELTEC Corporation, Richard Schwob, Thomas D. Myers and Tom Fisher was considered at a prior motion docket. For the following reasons, this motion is due to be granted.

### Facts[1]

In November, 1994 the plaintiff, Myra Pappas, was hired for the Reliable Electric division ("Reliable") of defendant RELTEC Corporation ("RELTEC") as a district sales manager to call on field locations and headquarters for the five state area serviced by South Central Bell. South Central Bell and Southern Bell were divisions of BellSouth at the time. District sales manager is a grade 26 position. Pappas had previously worked for three years as an account executive in AT&T's South Central Bell division. At the time she was interviewed, her interviewers expressed concern over how Pappas' gender would affect her job in such a male-dominated field.

Pappas consistently performed well at RELTEC. At some time in 1989, Pappas suggested

---

   1. The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the plaintiff.

to her immediate supervisor, defendant Thomas D. Myers, that she stop making field calls and focus on selling products to BellSouth headquarters. Subsequently, after a sales meeting, Myers told Pappas that defendant Richard Schwob, Vice President for Sales, was impressed with her and intended to promote her and put her in charge of all sales to BellSouth. In the following year, Pappas attended a sales conference at which Schwob and Myers discussed her promotion and possible title. Schwob told Pappas that he intended to promote Myers and that Pappas would then be promoted to Myers' job of general sales manager. In the summer of 1991, Myers was promoted. Pappas wrote a letter dated May 18, 1991 asking for the general sales manager job. Myers later told her that she was not qualified for the job and that the job would be given to defendant Tom Fisher. Fisher became Pappas' immediate supervisor. Myers told her she was still being considered for the promotion and that he would speak to Fisher about it. At her first performance evaluation with Fisher, Pappas asked about the promotion. Fisher told her that he was afraid some of the men would be discouraged by it and that he needed time to work things out.

In 1992, Pappas was given responsibility for BellSouth headquarters and began to shift her field duties to others. She did not receive an increase in pay or title. At this time, because she had no responsibility for field sales, her quota began to be computed by adding together the quotas of salespeople that handled the sales in the field of products for which she provided support at headquarters.

Pappas continued to receive good performance evaluations. Whenever she asked Fisher about the promotion, he told her he was working on it. At a meeting in October, 1993 Fisher told Pappas that she had a lot of things to work on. At this time, Pappas realized that she would not

2

receive the promotion that had been discussed. At the 1994 sales meeting, RELTEC announced the promotion of Paul Thompson and Jim Martin to grade 27 positions. Thompson was transferred to a different division and promoted to national account manager to several distributors. Thompson had years of experience selling to distributors. Pappas testified that she has sold to distributors. Martin was promoted to senior sales manager. Martin had 30 years of experience in the industry at the time of his promotion and was certified as a subject matter expert. At the time, Pappas has 13 years of experience in the industry, counting her time at AT&T, and was not certified as a subject matter expert. It is not clear in which positions Pappas expressed an interest or for which positions she was considered.

There is evidence that promotions to senior sales manager were not made only to fill particular vacancies. Two promotions have been made to the position of senior sales manager in the Southeast Region since 1992, that of Martin and that of Joseph Ross. At the time he was promoted, Ross had 20 years of experience in the telecommunications industry and was certified as a subject matter expert. Pappas testified that Ross has greater technical knowledge in some areas than she does because of his long experience.

At the 1994 meeting, Gary Holmes, a senior sales manager, told Pappas she was "the biggest tight-ass in the company." Pappas complained to the human resources department, which investigated and disciplined Holmes. Holmes was demoted, required to attend sexual harassment training, and referred to the Employee Assistance Program for alcohol counseling. Pappas states that she has had no further problems with Holmes.

Pappas also testified to number of other incidents that allegedly created a sexually hostile atmosphere. She complained that the periodic sales meetings were followed by a mandatory

3

cocktail hour, during which the men frequently became drunk and disorderly and used obscene language. These cocktail hours were often followed by parties which involved drinking, bawdy behavior, and visits to men's clubs. At one party, two male employees played leapfrog without wearing pants or underwear. Pappas was not present on that occasion. Pappas did not attend the late-night parties. On one occasion, Schwob said that he had noticed that Pappas didn't attend the after-hours parties. Pappas replied that she felt it would be inappropriate. Schwob responded that she was a big girl and could take care of herself. At company functions, men would attend men's clubs and the company would reimburse them for expenses incurred in these visits. Thompson and Myers asked Pappas more than once if she would like to go with them to the Gold Club, a well-known men's club in Atlanta, but she declined. As well, at a sales meeting in 1989, an employee mooned bystanders, including Pappas. At the same meeting, a male employee knocked on Pappas' door late at night and asked her to let him in. Pappas does not testify that he said anything sexual at that time. In 1993, Fisher told Pappas that she would have "to be one of the boys." On one occasion, after Pappas asked for permission to go to a particular conference, Schwob commented to Myers in the presence of Fisher that Myers could go home and make love to Schwob's wife that night, because if Myers was going to sic his woman on Schwob, Schwob would sic his woman on Myers.[2/]

---

      2. Several incidents are described in Pappas' brief but not supported by evidentiary submissions. In her brief, Pappas states that in 1990 she was required to attend a training seminar. Pappas states that she mentioned to Myers her concern about attending because another female employee, Allison Rogers, had been subjected to sexual harassment by the same instructor. Myers allegedly told Pappas that it was no big deal and instructed her to attend in spite of her concerns. Pappas states that she was required to attend once more, in spite of her protests. The brief cited to pages 333-336 and page 483 of Pappas' deposition. Page 333 was submitted and describes what Pappas knows of the harassment of Rogers. The rest of the pages were not submitted by either party. The incidents are not described in Pappas' affidavit.

      In her brief, Pappas also states that in 1991 Pappas and the only other female to attend arrived at a sales meeting to find the men watching a Playboy Channel show which contained explicit sexual acts, which remained on

Pappas testified that no other grade 26 employee had similar responsibilities to hers. She testified that some of grade 27 jobs, such as general sales manager, were similar to hers, but none were equivalent. She stated that there is a wide variety in every job. She testified that the job of general sales manager was similar to hers in that both jobs had responsibility for calling on headquarters. She also testified that the job of general sales manager was not similar to hers because it had management responsibility. She testified that her responsibilities and those of Fisher were similar in that both were responsible for getting the product approved, getting the contract negotiated, and being sure that all of the headquarters functions were taken care of. She testified that Fisher also had responsibility for at least 10 people who reported to him. She testified that there was no one in her area who called on headquarters and also performed field functions.

Pappas and other employees were paid a base salary and bonuses based on production relative to quota. In 1991, RELTEC employed 34 district sales managers at grade 26 and six employees at grade 27. Based on total compensation, Pappas was the fourth highest compensated district sales manager and was compensated higher than three of the grade 27 employees. Pappas' base salary for 1991 is not known. In 1992, RELTEC employed 33 district sales managers at grade 26 and seven employees at grade 27. Based on total compensation, Pappas was the thirteenth highest compensated district sales manager and was compensated higher than one of the grade 27 employees. Pappas' base salary was the eighth highest of 10 randomly selected district sales managers. In 1993, RELTEC employed 33 district sales managers at grade 26 and 9

---

the entire time Pappas was in the room. However, neither party has submitted evidence describing this incident. The brief cited to page 336 of Pappas' deposition, but that page was not submitted by either party. The incident is not described in Pappas' affidavit.

employees at grade 27. Based on total compensation, Pappas was the 29th highest compensated district sales manager[3/] and was not compensated higher than any of the grade 27 employees. Pappas' base salary was the seventh highest of 9 randomly selected district sales managers. In 1994, RELTEC employed 32 district sales managers at grade 26 and nine employees at grade 27. Based on total compensation, Pappas was the sixth highest compensated district sales manager[4/] and was compensated higher than one of the grade 27 employees. Pappas' base salary was the sixth highest of 9 randomly selected district sales managers. Pappas' sales quota was $17,800,000.00 in 1992 and $23,700,000.00 in 1993 and 1994, while sales quotas for other district sales managers ranged from $2,000,000.00 to $15,000,000.00.

In February, 1994, Pappas filed a charge of discrimination with the EEOC. Pappas filed this lawsuit on April 21, 1995. In January 1996 Pappas resigned from RELTEC to take another job. In her complaint, Pappas alleges the following counts: Count 1) discrimination by RELTEC, Schwob, and Myers in violation of Title VII in denying her appropriate promotions, compensating her unequally, and requiring her to work in a sexually hostile environment; Count 2) unequal compensation by RELTEC in violation of the Equal Pay Act; Count 3) promissory fraud by Schwob, Myers, and Fisher, individually and on behalf of RELTEC.[5/]

---

3. The defendants introduced testimony that this unusually low ranking resulted from an inventory overstock at BellSouth that hurt Pappas' performance relative to her quota.

4. All 1994 figures are based on a review of documents in the EEOC file reflecting a projection from figures from the first two quarters of 1994. Pappas' actual total compensation for 1994 was eighth highest of all district sales managers.

5. Although leave to amend the complaint was granted on December 29, 1995, and a proposed amended complaint was attached to the Motion for Leave to Amend, the plaintiff never filed a signed copy of the amended complaint. In her proposed amended complaint, Pappas added Reliance Electric Company ("Reliance Electric"), Rockwell International Corp. ("Rockwell"), and Kohlberg, Kraus, & Roberts ("KKR") as defendants. Pappas also added counts 4, 5, and 6 to state that Reliance Electric was the parent company and alter ego of RELTEC and that

Analysis

I.  Equal Pay Act

The defendants argue that Pappas cannot meet her burden under the Equal Pay Act (EPA) because she cannot point to any job that was equal to hers in skill, effort, and responsibility, and which was performed under similar working conditions. The defendants also argue that there is no individual liability under the EPA. The plaintiff responds that other grade 26 and grade 27 jobs required equal skill, effort, and responsibility.

To establish a prima facie case under the EPA, 29 U.S.C. § 206(d), the plaintiff must show that the employer pays different wages to male and female employees for jobs that are equal in skill, effort, and responsibility, in a similar situation or in the same establishment. *Mulhall v. Advanced Security, Inc.*, 19 F.3d 586, 590 (11th Cir. 1994). The plaintiff need not demonstrate discriminatory intent, and need not show that the jobs are identical, but only that they are substantially equal. *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992). If the plaintiff meets this burden, the defendant bears the heavy burden of demonstrating the wage differential is justified under one of the four exceptions to the EPA. *Id.* at 1532-33.

Pappas has not demonstrated that her job was substantially equal to any other. She testified that no other district sales manager had responsibility only for headquarters. Although her job was similar to others in some ways, in that all district sales managers strove to sell the company products, Pappas was relieved of the responsibility for field installations borne by other district sales managers. Neither was Pappas' job substantially equal to that of any grade 27 employee.

---

Rockwell and KKR are successors in interest to Reliance Electric. It appears that service was never attempted on these additional potential defendants.

All grade 27 employees discussed by Pappas in the deposition pages submitted to the court had substantial managerial responsibilities. Pappas had no managerial responsibilities. Because Pappas has not come forward with any job substantially equal to her own, all defendants are due to be granted summary judgment on Pappas' EPA claims. Because of this, it is not necessary to reach the issue of whether an individual is liable under the EPA.

II.   Title VII[6]

    A.   Equal Pay

The defendants argue that Pappas cannot establish a prima facie case of discrimination in compensation under Title VII because she cannot demonstrate that her job was substantially similar to higher-paying jobs occupied by males. The plaintiff responds that other grade 26 and grade 27 jobs were similar to hers. The plaintiff also argues that the magnitude of her quotas and her disparately lower pay contrasted with the higher pay received by male employees with substantially lower quotas raise an inference of discrimination sufficient to establish a prima facie case.

To establish a prima facie case of discrimination in compensation under Title VII, the plaintiff must show that she is female and that her job was substantially similar to higher paying jobs occupied by males. *Mulhall*, 19 F.3d at 598. If the plaintiff establishes a prima facie case, it is up to the employer to state a legitimate non-discriminatory reason for the disparity. *Id.* at 597-98. The defendant's burden in rebutting the plaintiff's prima facie case is "exceedingly light." *Id.* If the defendant offers such a reason, it is up to the plaintiff to prove that the stated

---

    6. In her brief, Pappas conceded that Schwob, Myers, and Fisher are due to be granted summary judgment on all Title VII claims, as an individual is not an employer within the meaning of Title VII. Plaintiff's Brief at p.11, n.5; *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).

reason is a pretext for discrimination. *Id.* at 597-98. The standard for whether a job is substantially similar to other jobs under Title VII is relaxed. *Id.* at 598. The plaintiff need not meet the standard of the EPA to prevail under Title VII. *E.E.O.C. v. Reichold Chemicals, Inc.*, 988 F.2d 1564, 1570 (11th Cir. 1993). The burden of proving discriminatory intent remains at all times with the plaintiff. *Id.*

Pappas has not demonstrated that her job was substantially similar to the jobs of other district sales managers or the jobs of grade 27 employees. As noted above, Pappas testified that none of the other district sales managers had responsibility solely for headquarters, without responsibility for field installations. As well, Pappas testified that the grade 27 comparators she sought to use had management duties that Pappas did not have. Although Pappas testified that she and her supervisor, Fisher, had the same goals of getting the product approved, getting the contract negotiated, and being sure that all of the headquarters functions were taken care of, Fisher also had supervisory authority for at least 10 employees.

Even if Pappas could establish a prima facie case of discrimination based on the magnitude of her quota compared with those of others, RELTEC has met its light burden of articulating a legitimate, non-discriminatory reason for Pappas' quota allocation. RELTEC stated that, because Pappas was no longer responsible for field sales, it computed her quota by combining the quotas of the field salespeople selling products for which Pappas provided support at headquarters. Pappas has put forward no evidence that this stated reason is pretextual. Because Pappas' base pay was within the range of that of other district sales managers, and because the jobs of district sales managers differ, Pappas' base pay is not a factor. Because Pappas has not demonstrated that her job was substantially similar to any other, RELTEC is due to be granted summary judgment

on Pappas' claim of discrimination in compensation under Title VII.

B.   Failure to Promote

The defendants argue that Pappas cannot establish a prima facie case of discrimination in promotion under Title VII because she cannot show that a less qualified male was promoted in her place. The defendant restricts the inquiry into the promotions of senior sales managers and Thompson, and argues that all who were promoted were better qualified. The defendant also argues that Pappas was not interested in the job to which Thompson was promoted. The plaintiff responds that she was better qualified than several males that were promoted to grade 27 positions.

To establish a prima facie case of discrimination in promotion under Title VII, the plaintiff must show that she is female, she was qualified for and applied for a promotion, she was rejected despite these qualifications, and less qualified males were promoted. *Wu v. Thomas*, 847 F.2d 1480, 1483 (11th Cir. 1988). The burden then falls on the employer to articulate a legitimate, non-discriminatory reason. *Id.* at 1483-84. If the employer is successful, the burden falls on the plaintiff to prove the reason is pretextual. *Id.* at 1484.

As to the position of senior sales manager, Pappas has failed to demonstrate that less qualified males were promoted in her place. Martin and Ross are the only two employees promoted to senior sales manager since 1992. At the times of their promotions, both Martin and Ross had substantially more experience in the telecommunications industry than Pappas had. Even if Pappas has established a prima facie case of discrimination, RELTEC's statement that it promoted Ross and Martin based on their experience suffices to meet its burden of articulating a legitimate, non-discriminatory reason for the promotions. Pappas has not demonstrated that this reason is pretextual.

10

As to Thompson's position, Pappas testified that she would not have been interested in the job. However, it is not clear whether Pappas knew about the vacancy in order to apply for it. Pappas has introduced evidence that Thompson was less qualified than she was for the position because he had less experience in the telecommunications field than she did. Assuming that Pappas has established her prima facie case, RELTEC has asserted a legitimate, non-discriminatory reason for the promotion — that Thompson had more experience selling to distributors than Pappas did, and that the person filling the position of national account manager had responsibility for selling to distributors.

Because Pappas has not established a prima facie case of discrimination in promotion, or because RELTEC has articulated a legitimate, non-discriminatory reason for its actions, RELTEC is due to be granted summary judgment on Pappas' claims of discrimination in promotion under Title VII.

C.   Sexual Harassment/Hostile Environment

The defendants argue that Pappas complains of only one incident of sexual harassment, in January 1994, and that the incident is insufficient to establish a prima facie case of hostile work environment under Title VII. In addition, the defendants argue that RELTEC responded promptly and effectively to Pappas' claim of sexual harassment, and thus cannot be liable even if Pappas could establish that a sexually hostile environment existed. The defendants argue that all previous allegations are time-barred. The plaintiff argues that her earlier allegations of sexual harassment are not time-barred because a sexually hostile environment is evidenced by a continuing course of conduct. The plaintiff argues that she has demonstrated that RELTEC condoned a sexually hostile work environment.

To establish a prima facie case of a sexually hostile environment under Title VII, a plaintiff must show that the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted). In a pure hostile environment setting, the defendant employer is liable only if it knew or should have known of the alleged harassment and failed to take prompt remedial action to remedy the situation. *Steele v. Offshore Ship Building, Inc.*, 867 F.2d 1311, 1316 (11th Cir. 1989).

Pappas cites several incidents at various sales meetings that combine to create a sexually hostile working environment. She points to Holmes' comment that she was a "tight-ass," Schwob's comment that she was a big girl and should be able to handle the late-night parties, Schwob's comment that Myers "sic'd his woman" on him, Myers' and Thompson's invitations to accompany them to the Gold Club, Fisher's comment that she should be "one of the boys," the 1989 mooning, and the fact that a male employee asked to be admitted to her room late at night. Pappas also cites the pervasive drinking and obscene language at the parties at the periodic sales meetings, as well as the fact that the male employees commonly visited men's clubs and were reimbursed for expenses incurred.

Although the behavior Pappas cites was offensive to her, it was not so severe and pervasive as to alter the terms and conditions of her employment. She was exposed to the offensive behavior at the sales meetings infrequently. While Pappas has testified that the sales employees only got together at these meetings and that therefore it is not surprising that she was not exposed to the behavior more frequently, the fact remains that the large part of her working conditions was not

affected. The isolated comments by Schwob, Fisher, Myers, and Holmes are also not so egregious or frequent as to alter her working conditions. Because Pappas has not showed that the workplace was permeated with behavior that was so severe or pervasive that it altered the terms and conditions of her employment, RELTEC is due to be granted summary judgment on Pappas' claims of a sexually hostile environment under Title VII. Because of this, it is unnecessary to address the issue of whether RELTEC took prompt and effective remedial action sufficient to avoid liability. However, the court notes that after Holmes' "tight-ass" comment, the only incident about which Pappas complained to the human resources department, RELTEC investigated and demoted Holmes, required him to attend sexual harassment counseling, and referred him to the Employee Assistance Program for alcohol counseling. Pappas has had no further complaint with Holmes' behavior since that time.

III.   Fraud

The defendants argue that Pappas' fraud claims are time-barred. The defendants also argue that Pappas has not stated a case of promissory fraud because she has not demonstrated that a promise was ever made or that, if a promise was made, the defendants did not intend to keep it when the promise was made. The plaintiff responds that she has established every element of the prima facie case of promissory fraud.

To establish promissory fraud in Alabama, the plaintiff must show the traditional elements of fraud — a false representation of an existing material fact upon which the plaintiff justifiably relied to her detriment. *Pinyan v. Community Bank*, 644 So. 2d 919, 923 (Ala. 1994). In addition, the plaintiff must show that at the time of the misrepresentation, the defendant had no intention of performing the promised act and that the defendant had an intent to deceive. *Id.*

13

Even if Pappas has demonstrated that Schwob, Myers or Fisher promised to promote her, she has not introduced any evidence that would tend to show that Schwob, Myers, or Fisher, individually or as agents for RELTEC, had no intention of promoting her when they made the promise. Because Pappas cannot demonstrate that the defendants had no intention of promoting her when they made the alleged promise, the defendants are due to be granted summary judgment on Pappas' fraud claim. Because the defendants are due summary judgment on these grounds, it is not necessary to reach the issue of whether Pappas' claims were time-barred. However, the court notes that the alleged promise was made at the latest in 1991, that this case was filed April 21, 1995, and that the statute of limitations for fraud is two years.

## Conclusion

Because Pappas has not come forward with any job substantially equal to her own, all defendants are due to be granted summary judgment on Pappas' EPA claims. Because an individual is not an employer within the meaning of Title VII, Schwob, Myers, and Fisher are due to be granted summary judgment on all Title VII claims. Because Pappas has not demonstrated that her job was substantially similar to any other, RELTEC is due to be granted summary judgment on Pappas' claim of discrimination in compensation under Title VII. Because Pappas has not established a prima facie case of discrimination in promotion, or because RELTEC has articulated a legitimate, non-discriminatory reason for its actions, RELTEC is due to be granted summary judgment on Pappas' claims of discrimination in promotion under Title VII. Because Pappas has not showed that the workplace was permeated with behavior that was so severe or pervasive that it altered the terms and conditions of her employment, RELTEC is due to be granted summary judgment on Pappas' claims of a sexually hostile environment under Title

VII. Finally, because Pappas cannot demonstrate that the defendants had no intention of promoting her when they made the alleged promise to promote, the defendants are due to be granted summary judgment on Pappas' fraud claim.

Dated: April 18, 1997

Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. Richard H. Walston
    Ms. Beverly Poole Baker
    Mr. Stephen L. Poer
    Mr. Victor L. Hayslip
    Ms. Patricia P. Burke
    Ms. Karen Newborn
    Mr. Tom A. King, Jr.